UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      CASE NO. 19-20276

v.                                      HON. ARTHUR J. TARNOW

KENDRICK ALLEN GILLS,

        Defendants.
        _____/

## SUPPLEMENT TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

On December 3, 2019, the Court ordered Mr. Gills to serve one day on count one and 24 months on count four consecutive to count one. Mr. Gills had pled guilty to social security fraud and aggravated identity theft. Mr. Gills was allowed to self-surrender to FCI Milan where he is currently serving his prison sentence. Mr. Gills has moved for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 28).

## BACKGROUND

Gills was indicted on May 2, 2019, on six counts. The Magistrate Judge ordered his release on a $10,000 unsecured bond on April 17, 2019. (ECF No. 9). On August 27, 2019, Gills pleaded guilty to Counts one and four of the indictment: Mail Fraud, in violation of 18 U.S.C. § 1341, and Aggravated Identity Theft, in

1

violation of 18 U.S.C. § 1028A. (ECF No. 18). The Court sentenced him to the mandatory minimum of 24 months (2 years) on count four consecutive to one day on count one, on December 5, 2019. (ECF No. 20). His projected release date is September 18, 2021.

Gills is incarcerated at FCI Milan, a low-security facility in Michigan. Gills petitioned the Court for compassionate release on June 19, 2020 (ECF No. 21). The Court appointed Counsel on the same day (ECF No. 22) and ordered concurrent briefs to be filed by June 26, 2020. A hearing was conducted on July 7, 2020. The Court took the matter under advisement pending receipt of additional medical records.

## UPDATED INFORMATION

Mr. Gills tested positive for the corona virus on December 16, 2020. He was moved into isolation and quarantined for ten days. He has not been tested again. On or about December 2, 2020, the Federal Detention Center witnessed the resurgence of COVID-19 at the facility. Over 100 hundred inmates tested positive for the virus. An entire unit was shut down for over a month. For reasons unknown to defense counsel Mr. Gills had been moved from the FCI to the detention center. While at the detention center, Mr. Gills became infected. In addition to contracting the corona virus Mr. Gills had to deal with low blood sugar, ringworm, mononeuropathy of lower limb, acute sinusitis, constipation, dermatitis, nail disorder, Rheumatoid

arthritis, osteoarthritis of hip, severe osteoarthritis of the bilateral hip joints, pain in unspecified joint, enlarged prostate without lower urinary tract symptoms, and unspecified abdominal pain. (Exhibit 4).

Mr. Gills has served nearly 85 percent of the 24 months and one-day sentence that was imposed, taken into account good time credit and halfway placement. He is scheduled to be released on September 18, 2021. He will be eligible for halfway placement in June of 2021. After Mr. Gill tested positive for the corona virus, he was very weak for several days. Mr. Gills was also dealing with low blood sugar, as well as increasingly painful and demobilizing osteoarthritis. (Exhibit 4).

Mr. Gills has been waiting for months to receive his medical records from the Social Security Administration (SSA), but was advised his request fell through the cracks. In addition, Defense counsel was advised that a new form had to be filled out because Mr. Gills' social security number had been improperly corrected. The numbers were not in the correct sequential order, so Mr. Gills scratched out the incorrect number and wrote the correct number on the form. Defense counsel met with Mr. Gills at the detention center on January 31, 2021 and obtained his signature on a new form. It was at this time that Mr. Gills advised defense counsel he had tested positive for the corona virus. On February 1, 2022, defense counsel attempted to send a fax transmittal to the Social Security Administration (SSA) offices, but was unable to do so due to technical issues with the SSA's fax machine. SSA's efforts to

3

correct the issues were unsuccessful. Defense counsel was instructed to contact the SSA on February 2, 2021, to determine if the problems had been resolved. At this point defense counsel cannot predict when Mr. Gill's SSA medical records will be available to the parties and the Court. Despite the absence of these records, it is undisputed that Mr. Gills has been infected with the corona virus.

### **Reinfection Possibility and Risks**

Reinfection is possible and should be undisputed.

Research discloses with certainty the possibility of reinfection, with the main relevant questions being how common reinfection is and how severe are the reinfection symptoms. For instance, some reports record low reinfection numbers. *See, e.g.,* [Coronavirus Reinfections Are Real but Very, Very Rare - The New York Times (nytimes.com)](). But the fact that the COVID-19 virus is only about one year old renders any conclusions regarding the infrequency of reinfection premature. The low reinfection rate numbers are the result of very demanding genetic tests that do not reflect the full scope of reinfection:

> Indeed, thus far the small number of scientifically confirmed instances of reinfection is due in part to the tally being confined to reinfections that have been genetically sequenced. In order to ascertain with scientific certainty that someone has contracted Covid-19 for the second time, scientists must have access to a genetic profile of the virus the patient is infected with. This must then be compared with the profile of the virus that caused the first infection. In brief, scientists must examine the genetic code of the virus from each round of illness and

prove they are distinct. That implies having access to all sets of swabs and the ability to perform whole genome sequencing.

[Though Rare, The Number Of Reinfections With Covid-19 Is Growing (forbes.com)](forbes.com)

In the past months, both the WHO and the CDC have warned about the likelihood of reinfection, conceding that the rate of reinfection compared to the rate of original infection is lower, but also emphasizing the inevitability of reinfections. The CDC states:

> To date, reports of reinfection have been infrequent. Similar to other human coronaviruses where studies have demonstrated reinfection, the probability of SARS-CoV-2 reinfection is expected to increase with time after recovery from initial infection due to waning immunity and possibly genetic drift. Risk of reinfection depends on the likelihood of re-exposure to infectious cases of COVID-19. As the COVID-19 pandemic continues, we expect to see more cases of reinfection.

[Duration of Isolation and Precautions for Adults with COVID-19 | CDC](https://www.cdc.gov).

Current WHO research confirms the CDC warning that reinfection rates will likely increase because COVID "immunity" is temporary and wanes over several months, rendering patients susceptible to reinfection within a short span of time. *See, e.g.,* [WHO warns Covid reinfections may occur as data suggests antibodies wane (cnbc.com)](cnbc.com). The CDC emphasizes that this increase in reinfection rates is a sound extrapolation from our extensive experience with other viruses:

> Reinfection means that a person was infected with the virus, recovered and then later became infected again, according to the U.S. Centers for Disease Control and Prevention. Based on the CDC's experience with other viruses, Covid-19 reinfections are expected, the agency said.

*Id.*

As explained in Mr. Gills' initial motion, it is now too late to protect Mr. Gills from contracting the virus. **It is not too late to protect him from reinfection and the severe risks associated with reinfection.**

**The BOP** "lockdown" would be advisable if the virus were not so serious. Unmasked guards, re-introduction of positive inmates with negative inmates, and intermittent checking of vital signs are inadequate to the task of treating and containing the virus. As a judge of this District explained, the Government's reassurances regarding its safety procedures are not reassuring:

> And the government's position that the defendant is at low or no risk of reinfection is somewhat less reassuring, considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported.

*United States v Brownlee*, No. 14-20562, 2020 WL 6118549, at *5 (ED Mich, October 16, 2020) (citations omitted).

While the Government may argue that Mr. Gills is currently asymptomatic with minimal symptoms, this status **increases** his future risk from the virus:

6

> And the risk of reinfection appears to be somewhat higher for those who have tested positive for the virus but appear to be asymptomatic or minimally symptomatic, such as Mr. Walls. See Quan-Xin Long, et al., Clinical & Immunological Assessment of Asymptomatic SARS-CoV-2 Infections, Nature Medicine (June 18, 2020), https://go.nature.com/3ifR85S (presenting data suggesting that "asymptomatic individuals [have] a weaker immune response to SARS-CoV-2 infection"); see also Apoorva Mandavilli, You May Have Antibodies After Coronavirus Infection. But Not for Long, New York Times (June 18, 2020), https://nyti.ms/3g63f4O (suggesting that asymptomatic individuals do not necessarily receive an "immunity certificate" if infected with the COVID-19 virus because the antibodies developed "may last only two to three months, especially in people who never showed symptoms while they were infected").

*United States v Walls*, No. 2:12-CR-00173, 2020 WL 6390597, at *10 (WD Pa, November 2, 2020); *see also* US reports first case of Covid reinfection with more severe symptoms second time (theprint.in) (explaining *Lancet* article about a patient with two negative tests between two positive tests, and this patient "showed more severe symptoms in the second reinfection than in the first.").

Given the likelihood that the number of reinfections will increase as the pandemic continues and that the symptoms following reinfection will be more severe, compassionate release is necessary in Mr. Gills' case:

> Other courts have opted to "err on the side of caution to avoid potentially lethal consequences for [defendant]" because "simply announcing that an inmate has 'recovered' does not mean [defendant] is completely safe from the virus." United States v. Armstrong, No. 18-CR-5108-BAS-1, 2020 WL 4366015, at *3 (S.D. Cal. July 30, 2020) (internal quotations, citation omitted) (finding "particularly persuasive that an inmate, being housed at the same facility as [defendant], was hospitalized and died after he was pronounced 'recovered' by the BOP"). While a CDC representative recently has suggested that "based on current evidence ... reinfections are likely uncommon within 3 months," this observation is not conclusive so as to provide clarity regarding whether someone who has been infected is immune for any period of time, no matter how brief.

7

*United States v Keys*, No. 2:16-CR-00234-KJM, 2020 WL 6700412, at *3 (ED Cal, November 13, 2020.)

        Respectfully submitted,

        **FEDERAL COMMUNITY DEFENDER**
        **EASTERN DISTRICT OF MICHIGAN**

        <u>s/Andrew Densemo</u>
        ANDREW DENSEMO (P37583)
        Attorney for Defendant
        613 Abbott Street, Suite 500
        Detroit, Michigan 48226
        (313) 967-5829
        E-mail: andrew_densemo@fd.org

Dated: February 3, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO. 19-20276

v.        HON. ARTHUR J. TARNOW

KENDRICK ALLEN GILLS,

        Defendants.
        _____/

## CERTIFICATE OF SERVICE

    I, hereby certify that on February 3, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

        Ryan A. Particka
        Assistant United States Attorney
        United States Attorney's Office
        211 W. Fort Street, Suite 2001
        Detroit, Michigan 48226
        E-mail:  ryan.particka@usdoj.gov

        **FEDERAL COMMUNITY DEFENDER**
        **EASTERN DISTRICT OF MICHIGAN**

        s/Andrew Densemo
        ANDREW DENSEMO (P37583)
        Attorney for Defendant
        613 Abbott Street, Suite 500
        Detroit, Michigan 48226
        (313) 967-5829
        E-mail:  andrew_densemo@fd.org

Dated:  February 3, 2021